**NOT RECOMMENDED FOR FULL-TEXT PUBLICATION**
File Name: 13a0676n.06

No. 12-6244

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

**FILED**
*Jul 23, 2013*
DEBORAH S. HUNT, Clerk

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff-Appellee, | ) | |
| | ) | |
| v. | ) | |
| | ) | ON APPEAL FROM THE |
| DONSHAY L. FALLS, | ) | UNITED STATES DISTRICT |
| | ) | COURT FOR THE MIDDLE |
| Defendant-Appellant. | ) | DISTRICT OF TENNESSEE |
| | ) | |

BEFORE:  BATCHELDER, Chief Judge; COOK and O'MALLEY, Circuit Judges.[*]

PER CURIAM.  Following his entry of a conditional guilty plea, Donshay L. Falls appeals the district court's denial of his motion to suppress and its enhancement of his sentence.  We affirm.

Officers with the Metropolitan Nashville Police Department, responding to a report of persons "clicking" weapons, questioned Falls, patted him down, and found a loaded .380 caliber pistol and approximately one-half ounce of marijuana, packaged in ten separate baggies.  A federal grand jury subsequently returned a one-count indictment charging Falls with possession of a firearm by a felon in violation of 18 U.S.C. §§ 922(g)(1) and 924.  Falls filed a motion to suppress the evidence obtained as a result of the allegedly unlawful detention and search.  After an evidentiary hearing and briefing by the parties, the district court denied the motion to suppress, finding that the

---

[*]The Honorable Kathleen M. O'Malley, Circuit Judge for the United States Court of Appeals for the Federal Circuit, sitting by designation.

encounter between the officers and Falls was voluntary and that Falls consented to the pat-down search. Falls entered a conditional guilty plea, reserving the right to appeal the denial of his motion to suppress.

At sentencing, Falls objected to the four-level increase to his base offense level pursuant to U.S.S.G. § 2K2.1(b)(6)(B) for possessing the firearm in connection with another felony offense. Finding that Falls possessed the firearm in connection with felony drug distribution, the district court overruled the objection and applied the enhancement. After considering the sentencing factors under 18 U.S.C. § 3553(a), the district court sentenced Falls to 110 months of imprisonment, the bottom of the advisory guidelines range.

Falls now appeals the denial of his motion to suppress. On appeal of a district court's decision regarding a motion to suppress, we review the district court's factual findings for clear error and its legal conclusions de novo. *United States v. Hinojosa*, 606 F.3d 875, 880 (6th Cir. 2010). "Where a district court denies that motion, we consider the evidence in the light most favorable to the government." *United States v. Carter*, 378 F.3d 584, 587 (6th Cir. 2004) (en banc) (internal quotation marks omitted).

Falls argues that the district court erred in finding that his encounter with the officers was consensual. According to Falls, the officers conducted an investigative stop under *Terry v. Ohio*, 392 U.S. 1, 21-22 (1968), but lacked reasonable suspicion of criminal activity, rendering his detention unlawful.

"Law enforcement officers do not violate the Fourth Amendment's prohibition of unreasonable seizures merely by approaching individuals on the street or in other public places and

putting questions to them if they are willing to listen." *United States v. Drayton*, 536 U.S. 194, 200 (2002). A consensual encounter becomes a seizure requiring reasonable suspicion or probable cause "only if, in view of all of the circumstances surrounding the incident, a reasonable person would have believed that he was not free to leave." *United States v. Mendenhall*, 446 U.S. 544, 554 (1980). Factors indicating a seizure include "the threatening presence of several officers, the display of a weapon by an officer, some physical touching of the person of the citizen, or the use of language or tone of voice indicating that compliance with the officer's request might be compelled." *Id*.

At the suppression hearing, the officers testified that they were dispatched in response to a call reporting that several individuals at the end of Charlie Place, a cul-de-sac in a high crime area, were "clicking" weapons. When the officers arrived, they saw Falls at the end of the cul-de-sac and engaged him in conversation. Officer Michael Neumeyer testified that he "asked Mr. Falls to stop and talk with us." According to Falls, the officers told him to "stop" and "come here." Officer Donald Kahn testified that he said something to the effect of, "Hey, how you doing? Do you live around here?" Falls said that he lived on Charlie Place and pointed to a residence. Officer Kahn asked Falls if he had any weapons on him, and Falls responded in the negative. Officer Kahn testified that he then said to Falls, "We got a call about some people with weapons. You don't mind if I pat you down for weapons, do you?" According to the officers, Falls responded, "No, go ahead." Officer Kahn patted Falls down and found the loaded pistol in his waistband.[1]

---

[1]During a March 18, 2011, hearing regarding Falls' motion to suppress, there was conflicting testimony regarding whether he consented to the pat-down search. Officers Kahn and Neumeyer testified that Falls consented to the search, while Falls disagreed. The district court expressly credited the officers' testimony over Falls' testimony to conclude that he consented to the pat-down

Falls contends that a seizure occurred based on the evidence that Officer Neumeyer "ordered" him to stop. The district court concluded that "Officer Neumeyer's words would be interpreted by a reasonable person as simply a normal means used by one individual for attracting the attention of another individual." Officer Neumeyer testified that he "asked" Falls to stop and that he did not raise his voice. It is undisputed that the officers did not display their weapons or touch Falls before conducting the pat-down search. Although Falls claimed that he felt "blocked in," there was no evidence that he was physically unable to leave. We agree with the district court that, under the totality of the circumstances, Officer Neumeyer's use of the words "stop" and "come here," without any other evidence of coercion, did not convert the consensual encounter into a seizure. *See United States v. Davis*, 514 F.3d 596, 610 (6th Cir. 2008) (affirming the district court's ruling that encounter was consensual where there was no evidence that officer used the imperative "come here" in an intimidating or coercive manner).

Falls also appeals the four-level increase to his base offense level pursuant to U.S.S.G. § 2K2.1(b)(6)(B) for possessing the firearm in connection with felony drug distribution. "[I]n the case of a drug trafficking offense," U.S.S.G. § 2K2.1(b)(6)(B) applies if "a firearm is found in close proximity to drugs, drug-manufacturing materials, or drug paraphernalia." U.S.S.G. § 2K2.1 cmt. n.14(B). On appeal of the district court's application of the U.S.S.G. § 2K2.1(b)(6)(B) enhancement, we review the district court's factual findings for clear error and "accord 'due deference' to the

---

search. *See United States v. Falls*, 3:10-cv-283, Doc. No. 31 at 12–13. Falls does not challenge that conclusion.

district court's determination that the firearm was used or possessed 'in connection with' the other felony." *United States v. Taylor*, 648 F.3d 417, 432 (6th Cir. 2011).

The evidence at the sentencing hearing established that the marijuana found in Falls's pocket was packaged in one larger bag and nine smaller individual bags with a total weight of 13.7 grams. "[R]elying on the packaging, the amount of marijuana and the uncontested facts in the presentence report," the district court found by a preponderance of the evidence that Falls possessed the firearm in connection with felony drug distribution and rejected his argument that he possessed the marijuana for personal use: "Nine bags of marijuana, however small, is a pretty clear indication of distribution. The inference that he possessed nine individual bags for personal use is not consistent with common sense and the typical way someone would purchase marijuana for their own use . . . ." Falls argues that no more evidence supports the government's distribution theory over his personal use theory. "Where there are two permissible views of the evidence, the factfinder's choice between them cannot be clearly erroneous." *Anderson v. City of Bessemer City, N.C.*, 470 U.S. 564, 574 (1985). Accordingly, the district court did not clearly err in finding that Falls intended to distribute the marijuana. *See United States v. Burton*, 440 F. App'x 474, 476-77 (6th Cir. 2011).

For the foregoing reasons, we affirm the district court's denial of Falls's motion to suppress and its application of the four-level enhancement under U.S.S.G. § 2K2.1(b)(6)(B).